William J. Heller
**McCARTER & ENGLISH LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444

Thomas A. Smart (*pro hac vice*)
Paul C. Llewellyn (*pro hac vice*)
**KAYE SCHOLER LLP**
425 Park Avenue
New York, NY 10022
(212) 836-8000

*Counsel for Plaintiffs-Counterclaim*
*Defendants The Hershey Company and*
*Hershey Chocolate & Confectionery Corporation*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THE HERSHEY COMPANY and HERSHEY    :
CHOCOLATE & CONFECTIONERY CORPORATION

   :

         Plaintiffs-Counterclaim Defendants,      Civil Action No:

   :   07-CV-1601 (SDW)

    v.

   :   **<u>REDACTED</u>**

PROMOTION IN MOTION, INC.,

   :

         Defendant-Counterclaim Plaintiff.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF
## UNDISPUTED FACTS IN SUPPORT OF PARTIAL SUMMARY
## JUDGMENT ON DEFENDANT'S COUNTERCLAIM AND AFFIRMATIVE
## <u>DEFENSE THAT THE KISSES TRADEMARK IS PURPORTEDLY GENERIC</u>

Pursuant to Local Civil Rule 56.1, plaintiffs The Hershey Company and Hershey

Chocolate & Confectionery Corporation (hereinafter collectively referred to as "Hershey"),

submit this Statement of Undisputed Facts in support for their motion for partial summary

judgment on defendant's counterclaim for cancellation, pursuant to 15 USC § 1064(3), of six of Hershey's trademarks on the basis that the terms KISS and KISSES are generic.

This Statement is based upon, *inter alia*, the Declaration of D. Michael Wege, dated February 4, 2010 ("Wege Decl.") and exhibits thereto, the Declaration of Lois B. Duquette, dated February 5, 2010 ("Duquette Decl.") and exhibits thereto, the deposition testimony[1] and exhibits attached to the Declaration of Thomas A. Smart dated February 5, 2010 ("Smart Decl."), and Declaration of John Ramonetti, dated February 4, 2010 ("Ramonetti Decl.") and exhibits thereto.

**Promotion in Motion and SWISSKISS**

1.

2.

3.

---

[1] Mr. Michael Rosenberg, President and CEO of PIM, appeared as PIM's Rule 30(b)(6) corporate representative during the proceeding between Hershey and PIM before the Trademark Trial and Appeal Board ("TTAB proceeding") and in the current litigation. Accordingly, there are citations in this document to two different Rosenberg deposition transcripts, one dated February 16, 2006, taken in the TTAB proceeding ("Rosenberg 06 Tr."), and one taken in this lawsuit, dated April 30, 2009 ("Rosenberg 09 Tr."). The TTAB proceeding has been stayed in light of Hershey's federal lawsuit against PIM.

4.      PIM   presently   advertises   over   ten   products   on   its   website (www.promotioninmotion.com), including the SUISSE chocolate bar and TOGGI chocolate wafers.  (Smart Decl. Ex. M; *id.* Ex. H, Rosenberg 09 Tr. 115-16).

5.      Nowhere on PIM's website is the term "kiss" or "kisses" used in connection with or to describe any of its products.  (Smart Decl. Ex. M; *id.* Ex. H, Rosenberg 09 Tr. 115-16).

6.      PIM is the owner of the registered trademark SWISSKISS (U.S. Reg. No. 2,889,705) for "chocolate of Swiss origin."  (Smart Decl. Ex. L; *id.* Ex. H, Rosenberg 09 Tr. 58).

7.      There is no evidence that PIM has ever purportedly sold any chocolate products or other products that use the term "kiss" or "kisses" on packaging apart from the single shipment of SWISSKISS-branded product on June 24, 2004.  (Smart Decl. Ex. H, Rosenberg 09 Tr. 62-63).

8.      The single shipment of SWISSKISS product to Continental consisted of two SUISSE chocolate bars in a clear cellophane bag attached to a header that bore both the SUISSE and SWISSKISS marks.  (Smart Decl. Ex. K; *id.* Ex. H, Rosenberg 09 Tr. 62-63).

9.

10.

**Hershey and the KISSES Trademarks**

11.      Hershey is a major manufacturer and seller of chocolate and confectionery candy and chocolate-related grocery products.  (Wege Decl. ¶ 4)

12.      Hershey's KISSES brand chocolates is one of the most successful products to be manufactured and sold by Hershey.  (Wege Decl. ¶ 5)

13.      Hershey's KISSES brand chocolates were introduced by Hershey in 1907 and have been sold continuously since, except for a brief period between 1942 and 1949 when company records indicate that production was halted due to the rationing of silver foil during and after World War II.  (Wege Decl. ¶ 6).

14.      The KISSES brand line consists of variously flavored and sized solid chocolates, with and without such ingredients as nuts.  (Wege Decl. ¶ 7).

15.      The best selling items in the KISSES brand line are bite-sized individually wrapped KISSES milk chocolates.  (Wege Decl. ¶ 9).

16.      Based on factory sales, Hershey sells over 10 billion individual KISSES chocolates per year, and estimates that there have been over $2.5 billion dollars of retail sales in the United States of products bearing the KISSES marks over the past five years.  (Wege Decl. ¶ 10)

17.      Hershey owns a federal trademark registration for the trademark KISSES (U.S. Reg. No. 2,416,701) for use in connection "with solid chocolate candy with and without ingredients such as nuts."  (Duquette Decl. Ex. 1).

18.      The Hershey family of KISSES trademarks are the subject of a number of federal trademark registrations, including:

- **KISSES**, U.S. Registration No. 2,416,701.  Registered on January 2, 2001 for use in connection with solid chocolate candy, with and without ingredients such as nuts;

- **WHEN YOU WANT TO SAY ALOHA, SAY IT WITH A KISS**, U.S. Registration No.3,685,216.  Registered on Sept. 22, 2009 for use in connection with candy;

- **SAY HAPPY EASTER WITH A KISS!**, U.S. Registration No. 3,679,745.  Registered on September 8, 2009 for use in connection with candy;

- **SAY IT WITH A KISS**, U.S. Registration No. 3,604,137.  Registered on April 7, 2009 for use in connection with candy; and

- **WHATEVER YOU WANT TO SAY, SAY IT WITH A KISS**, U.S. Registration No. 3,493,764.  Registered on Aug. 26, 2008 for use in connection with candy;

- **SEALED WITH A KISS**, U.S. Registration No. 3,382,925.  Registered on Feb. 12, 2008 for use in connection with candy;

- **MERRY KISSES**, U.S. Registration No. 3,377,344.  Registered on Feb. 5, 2008 for use in connection with candy;

- **SEALED WITH A HERSHEY'S KISS**, U.S. Registration No. 3,363,296.  Registered on Jan. 1, 2008 for use in connection with candy;

- **KISS OF THE MONTH**, U.S. Registration No. 3,328,351.  Registered on Nov. 6, 2007 for use in connection with candy;

- **KISS SOMEONE**, U.S. Registration No. 3,304,676.  Registered on Oct. 2, 2007 for use in connection with candy;

- **KIS**, U.S. Registration No. 3,261,872   Registered on July 10, 2007 for use in connection with candy, chocolate and confectionery bits for baking;

- **KISS ABLES**, U.S. Registration No. 3,217,777.  Registered on March 13, 2007 for use in connection with  for use in connection with candy;

- **EVERYDAY DESERVES A KISS**, U.S. Registration No. 3,195,247.  Registered on Jan 2, 2007 for use in connection with chocolate and candy;

- **GOODNIGHT KISSES**, U.S. Registration No. 2,285,652.  Registered on October 12, 1999 for use in connection with cocoa mixes, chocolate powder and hot chocolate;

- **MINI KISSES**, U.S. Registration No. 2,507,281.  Registered on November 13, 2001 for use in connection with confectionery bits for baking;

- **HUGS & KISSES**, U.S. Registration No. 2,321,971.  Registered on February 22, 2000 for use in connection with candy;

- **HUGS 'N KISSES**, U.S. Registration No. 1,797,199.  Registered on October 5, 1993 for use in connection with candy;

- **KISSES KISSES KISSES**, U.S. Registration No. 1,396,853.  Registered on June 10, 1986 for use in connection with mugs filled with candy;

- **A BIG KISS OFF**, U.S. Registration No. 1,199,747.  Registered on June 29, 1982 for use in connection with candy;

- **A KISS ESPECIALLY FOR YOU**, U.S. Registration No. 1,177,511.  Registered on November 10, 1981 for use in connection with chocolate candy; and

- **A BIG KISS FOR YOU,** U.S. Registration No. 1,074,784.  Registered on October 4, 1977 for use in connection with candies including chocolate products.

All of the foregoing are valid and subsisting registrations at the United States Patent & Trademark Office.  (Duquette Decl. Ex. 1).

19.       Hershey also owns trademark registrations covering the conical shape and configuration of the wrapped and unwrapped KISSES brand chocolate products.  (*See* U.S. Reg. Nos. 186,828, 1,031,836; 1,038,025; 1,986,822; 2,138,566; and 2,187,189).  All of the foregoing are valid and subsisting registrations at the United States Patent & Trademark Office.  (Duquette Decl. Ex. 2).

**The Strength of the KISSES Trademarks**

20.       Hershey's products bearing the KISSES trademarks are widely advertised and sold in a variety of retail outlets throughout the United States.  (Wege Decl. ¶ 11).

21.       The KISSES trademarks have been promoted in a variety of media, including television, print and the Internet.  (Wege Decl. ¶ 12).

22.       In the past five years, Hershey has spent over one hundred million dollars on advertising related to the promotion of the KISSES brand line.  (Wege Decl. ¶ 12)

23.       Representative samples of third party media articles regarding the KISSES brand are attached as Exhibit 3 to Wege Declaration.

24.       In conjunction with the one hundred year anniversary of KISSES, the United States Postal Service issued a stamp featuring the KISSES trademark and trade dress.  (Wege Decl. Ex. 4).

25.     Representative samples of third party media articles surrounding the one hundred year anniversary of KISSES brand chocolates in 2007 are attached as Exhibit 5 to Wege Declaration.

26.     The book *Brand Sense* by Philip Kotler identified the Hershey's KISSES brand as a "cultural icon."  (Wege Decl. ¶ 16 and Ex. 6).

27.     Harris Interactive releases EquiTrend, a tracking study that measures and compares brand equity for over 1,000 brands in 39 categories.  (Wege Decl. ¶ 17).  The 2007 Harris EquiTrend report surveyed 27,555 American consumers ages 15 and over, and found Hershey's KISSES brand chocolates had achieved the highest overall brand equity, as well as the highest overall relevance score, among all 1,120 surveyed brands.  (Wege Decl. ¶ 17 and Ex. 7 ). The 2009 Harris EquiTrend report surveyed 24,446 American consumers, and ranked Hershey's KISSES brand chocolates number two in overall brand equity among all 1,202 surveyed brands. (Wege Decl. ¶ 17 and Ex. 7).

28.     Landis Strategy & Innovation, LLC ("Landis") is a research-based consultancy group that advises companies on product development.  A December 2007 market research study conducted by Landis found that the KISSES brand had 99% aided awareness among consumers and categorized the KISSES brand as a "megabrand."  (Wege Decl. ¶ 19 and Ex. 8).

29.     Millward Brown is a market research and brand consulting company.  A Millward Brown survey, completed in 2005, found that the KISSES brand had 99% brand aided awareness among consumers.  (Wege Decl. ¶ 20 and Ex. 9).

30.     Three expert surveys, discussed below, conducted over the past 14 years, using the same basic methodology, found well over two thirds of consumers perceived the term

KISSES to be a brand name of chocolate candy and not a generic term.  (Smart Decl. Exs. Z-1, Z-2)

31.     In 2009, Dr. Gary Ford conducted a telephone survey of 340 respondents, who were men and women 18 years or older who had purchased chocolate candy in the past six months and who expected to purchase chocolate candy in the next 6 months.  (Smart Decl. Exs. Z-1, Z-2).

32.     After being screened and qualified, the meanings of the terms "brand name" and "common name" were explained to the respondents participating in the Ford survey. Specifically, respondents were told, "As you may know, there are two ways to name products sold on the market.  First, there is the common or generic name for the product type — the name by which you would call all products of that type.  Second, there is the brand name — the proprietary name of a particular product that a company uses to identify a product of that type." (Smart Decl. Exs. Z-1, Z-2).

33.     After receiving the definitions of generic names and brand names, the respondents were then given a quiz where they were asked to classify the terms cereal and Cheerios and automobile and Chevrolet.  Respondents were given a maximum of two chances to correctly answer the questions concerning these terms.  Only respondents that properly identified the generic names and brand names in the quiz moved on to the actual survey.  (Smart Decl. Exs. Z-1, Z-2).

34.     Ford survey respondents were then asked whether they perceived each of a list of terms for chocolate candy to be describing a brand or common name for a product.  Specifically, respondents were told by the interviewer, "I'm going to read some names and I'd like you to tell me whether you think the name is a common or generic name for chocolate candy or you think

the name is a brand name a company uses to identify a particular chocolate candy.  If you don't know the answer or don't have an opinion about one or more of the names, please tell me you don't know or don't have an opinion, rather than taking a guess."   The terms about which respondents were questioned were: "kisses," "m&m's," "milk duds," "chocolate covered peanuts," and "malted milk balls."  (Smart Decl. Exs. Z-1, Z-2).

35.       The results of Dr. Ford's survey showed that 72% of respondents perceived "kisses" as a brand name.  Comparable results for "m&m's" and "milk duds" showed that 94.1% of respondents perceived "m&m's" as a brand name and 84.7% of respondents perceived "milk duds" as a brand name.   Conversely, 91.5% of respondents perceived "chocolate covered peanuts" as a common or generic name, and 67.6% of respondents perceived "malted milk balls" as a common or generic name.  (Smart Decl. Exs. Z-1, Z-2).

36.       Dr. Ford also reviewed and evaluated two telephone consumer surveys conducted, respectively, by Dr. Ivan Ross in 1996 and Dr. Seymour Lieberman in 2006.  (Smart Decl. Exs. Z-1, Z-2, Ford Rep. ¶¶1-2 & Exs. C, D.).  Both the Ross and Lieberman surveys used the same basic methodology as the Ford Survey.

37.       In February 2006, Dr. Seymour Lieberman conducted a telephone survey of 332 respondents, who were men and women 18 years or older who had purchased chocolate candy in the past 6 months and who expected to purchase chocolate candy in the next 6 months.  Dr. Lieberman found that 70.5% of respondents perceived "kisses" as a brand name, 93.7% perceived "m&m's" as a brand name, 82.8% perceived "milk duds" as a brand name, 87.3% perceived "chocolate covered peanuts" as a generic name, and 64.5% perceived "malted milk balls' as a generic name.  (Smart Decl. Exs. Z-1, Z-2, Ford Rep. ¶¶1-2 & Ex. D.).

38.    In July 1996, Dr. Ivan Ross conducted a survey of 316 respondents, who were men and women 18 years or older who expected to purchase chocolate candy in the next 6 months.  Dr. Ross found that 79% of respondents perceived "kisses" as a brand name, 94% of respondents perceived "m&m's" as a brand name, 84% of respondents perceived "milk duds" as a brand name, 74% perceived "chocolate covered peanuts" as a generic name, and 56% perceived "malted milk balls" as a generic name.  (Smart Decl. Exs. Z-1, Ford Rep. ¶¶1-2 & Ex. C).

39.    PIM has offered no survey evidence of potential purchasers to determine whether potential purchasers perceive "kisses" to be a generic term or a brand name for chocolates.

40.    In 2000, in connection with Hershey's application to register the trademark KISSES for "solid chocolate candy, with and without ingredients such as nuts," the United States Patent and Trademark Office's Trademark Trial and Appeal Board held that KISSES "is in fact perceived by consumers of these goods, not as the generic name of a type of candy, but rather as the brand name of candy emanating from a single source" and that "KISSES is now a famous trademark which identifies [Hershey's] chocolate candy," and rejected the argument that "kisses" was a generic name for chocolate candy.  (Duquette Decl. ¶ 8 & Ex. 3).

**Hershey's Enforcement of the KISSES Trademarks**

41.    Over the past twenty years, conservatively Hershey has sent over fifty demand letters to third parties who were using the term KISS or KISSES, or a term confusingly similar thereto, in connection with the sale of generally solid chocolate products, who subsequently ceased their challenged conduct.  (Duquette Decl. Ex. ¶ 11 & Ex. 4).

42.    Hershey also polices the use of KISS or KISSES, or any term confusingly similar thereto, in connection with non-chocolate products that also use the unique conical shape of

Hershey's KISSES brand chocolates.  For example, Hershey has successfully policed against use of the terms KISS or KISSES on earrings and candles that are shaped like Hershey's KISSES brand chocolates.  There have been at least forty-eight successful enforcements by Hershey against third parties using the term KISS or KISSES, or any term confusingly similar thereto, in connection with non-chocolate products that also use the unique KISSES conical shape. (Duquette Decl. ¶ 12).

43.    Hershey has also enforced the KISS and KISSES trademarks where third parties are referencing Hershey's KISSES brand chocolates on other products, such as apparel decorated with Hershey's KISSES chocolates.  There have been at least twenty-five successful enforcements against third parties using the term KISS or KISS or any term confusingly similar thereto in connection with such products in a manner that is referencing Hershey's KISSES chocolates.  (Duquette Decl. ¶ 13).

44.    In the past ten years, Hershey has commenced at least ten successful lawsuits in the United States against entities using marks that infringed or diluted Hershey's KISS or KISSES trademarks.  Each of these successful lawsuits resulted in consent judgments acknowledging Hershey's exclusive rights in the KISS and KISSES trademarks and enjoining further infringement and dilution of the trademarks by the infringer, or otherwise resulted in the cessation of the challenged conduct.  (Duquette Decl. ¶ 15).

45.    Hershey also has commenced at least thirty successful trademark opposition proceedings before the United States Patent & Trademark Office's Trademark Trial & Appeal Board concerning marks that infringe or dilute the KISS or KISSES trademarks.  (Duquette Decl. ¶ 16).

**Online Uses of "Kisses" In Connection with Chocolate**

46.      PIM, through its linguistic expert, offered evidence of use of the term "kisses" (with a lowercase "k") in news databases.  This evidence consisted of two searches conducted in 2001 and 2006.  (Smart Decl. Ex. B, Butters Tr. 199-201, 205, 226, 230).

47.      There is no evidence that either of the searches conducted by PIM's expert is a representative sampling of all uses of the word or term "kisses" in news databases.  Nor does PIM's expert assert that the majority of such uses in news databases are "kisses" with a lowercase "k."  (Smart Decl. Ex. B, Butters Tr. 201-04, 217-19).

48.      The first search conducted by PIM's expert consisted of the phrase "chocolate kiss(es)" in two years of a Westlaw news database (May 28, 2000 to February 19, 2001), excluding the words Hershey and Hershey's.  PIM's expert admitted that this search did not include the full universe of uses of "Kisses," and that by excluding the terms "Hershey" and "Hershey's" from the search, there is no way of knowing, or making a comparison to, the number of instances of the term or word "Kisses" and "chocolate" that are accompanied by a mention of "Hershey" or 'Hershey's."  (Smart Decl. Ex. B, Butters Tr. 199, 202-03, 220-21).

49.      PIM's expert admitted it is more likely that any given writer would capitalize "Kisses" in the phrase "Hershey's Kisses" than if the term "Hershey's" did not precede the term "Kisses."   PIM's expert admitted that he did not conduct any online searches of the phrase "Hershey's Kisses."  (Smart Decl. Ex. B, Butters Tr. 202-03, 227-28).

50.      The second search conducted by PIM's expert consisted of the phrase "chocolate kisses" in two years of LexisNexis Academic Quick Search News Service (March 19, 2004 to February 22, 2006), without excluding the word Hershey(s).  PIM's expert admitted that someone who thinks of "kiss" as a generic term is more likely to say "chocolate kisses" than to

say "kisses chocolate."  PIM's expert admitted that he did not conduct any online searches of the phrase "kisses chocolate."  (Smart Decl. Ex. B, Butters Tr. 203-204, 226-27).

51.      PIM's linguistic expert admitted that whether a term is understood to be a generic term is "not necessarily what sometimes people say and write, but rather what . . . people believe about the meaning of the words that they are saying and writing."  (Smart Decl. Ex. B., Butters Tr. 156).

52.      PIM's expert admitted that capitalization of a term, or lack thereof, does not necessarily indicate whether the writer thinks a term is generic.  (Smart Decl. Ex. B, Butters Tr. 164-65, 184-85).

**Chocolate and Non-Chocolate**

53.      It is common in the confectionery industry for companies that sell both chocolate and non-chocolate products distinguish between the two different types of candy in communications to consumers.  (Smart Decl. Ex. I, Sarris Tr. 10-11; Ramonetti Decl. Exs. 1-6).

54.      Hershey sells chocolate candy products, such as the KISSES product line, and non-chocolate products (also known as sugar confectionery brands), such as TWIZZLERS and GOOD & PLENTY candies.  (Wege Decl. ¶ 21).  Hershey's website, www.hersheys.com, lists the chocolate candy and sugar confectionary products in separate categories.  (Wege Decl. ¶ 21 and Ex. 11).

55.      New England Confectionery ("NECCO") sells both "chocolate and non-chocolate" products, and NECCO's website is divided into separate "chocolate" and "non-chocolate" product sections.  (Smart Decl. Ex. N; *id.* Ex. E, Hague Tr. 11, 75).

56.      Continental Concessions Supplies, Inc. sells both chocolate and non-chocolate products and recognizes that consumers sometimes want chocolate and other times want sugar confections.  (Smart Decl. Ex. D, Gottlieb Tr. 44-46).

57.      Lammes Candies' website distinguishes between chocolates, on the one hand, and taffies & toffee, on the other hand, in advertising to consumers.  (Smart Decl. Ex. Q; *id.* Ex. J, Teich. Tr. 20-21).

58.      Several online retailers, such as The Online Candy Shop, Dylan's Candy Bar, Economy Candy, The Sweet Life, Candy Warehouse, and Hometown Favorites, market chocolate as a distinct category from non-chocolate candies in advertising to consumers. (Ramonetti Decl. Exs. 1-6).

**Alternatives to the Term "Kiss" With Respect To Chocolate Products**

59.      There are a variety of terms other than "kiss" that manufacturers and sellers of generally solid chocolate products use to refer to generally solid chocolate products, including balls, bars, chips, chocolate, chocolates, chocolate candies, chunks, drops, bites,        , clusters, cups, discs,       , nonpareils, pearls, squares, sticks, truffles,             , twists, and wafers. (Ramonetti Decl. Exs. 7-31; Wege Decl. ¶ 22; Smart Decl. Ex. G,

                                                             .

60.      Mars describes its M&M's chocolate product as "chocolate candies."  (Ramonetti Decl. Ex. 32).

61.      Wilbur Chocolate does not use the term "kisses" in connection with its conically shaped Wilbur Buds chocolates.  (Ramonetti Decl. Ex. 33; Smart Decl. ¶¶ 23, 25 & Exs. V, X).

62.

**Dictionary Definitions**

63.     PIM's expert testified that a disclaimer stating that the inclusion or exclusion of a term does not affect the legal status of the term as a trademark could be found "at the beginning of virtually every dictionary." (Smart Decl. Ex. B, Butters Tr. 79-80)

64.     The 1991 Random House Dictionary states: "The inclusion, exclusion or definition of a word or term is not intended to affect or to express a judgment on the validity or legal status of the word or term as a trademark, service mark or other proprietary term." (Smart Decl. Ex. B, Butters Tr. 76-77).

65.     The 1987 Random House Dictionary states: "All words or terms in which proprietary rights may exist, the inclusion, exclusion or definition of a word or term is not intended to affect nor to express a judgment on the validity or legal status of the word or term as a trademark, service mark or other proprietary term." (Smart Decl. Ex. B, Butters Tr. 76-78).

66.     The American Heritage Dictionary of the English Language, 4th edition, states: "The inclusion of any word in the dictionary is not, however, an expression of the publisher's opinion as to whether or not it is subject to proprietary rights, indeed no definition in this dictionary is to be regarded as affecting the validity of any trademark." (Smart Decl. Ex. O; *id.* Ex. B, Butters Tr. 78-80).

67.     The Encarta Word English Dictionary states: "Neither the presence nor absence of any such identification in this dictionary is to be regarded as affecting in any way or expressing

the judgment on the validity or legal status of any trademark, service mark or any other proprietary rights anywhere in the world."  (Smart Decl. Ex. P; *id.* Ex. B, Butters Tr. 80-82).

**PIM's Evidence of Modern Third Party Use of the Terms "Kiss" or "Kisses"**

68.     PIM produced approximately 226 examples of alleged third party products using the term "kiss" or "kisses."  Of those 226 examples, only 89 relate to alleged use of the term "kiss" or "kisses" to denote chocolate products; the other 137 relate to taffy, mint and other non-chocolate products.  Of the 89 relating to alleged use of the term "kiss or "kisses" to denote chocolate products, 24 had ceased any such alleged use by 2009 (because, for example, the website identified by PIM no longer displayed a product being sold in conjunction with the term "kiss" or "kisses"), eight were references to Hershey's KISSES chocolate product, and eight were foreign products unavailable for purchase in the United States.  (Duquette Decl. ¶ 18).

69.     Of the remaining 49 products identified by PIM that allegedly used the term "kiss" or "kisses" to denote chocolate products, Hershey sent demand letters and successfully enforced 31 of the third party uses (Duquette Decl. ¶ 19 & Ex. 4).  Three others referred to Madelaine's Love & Kisses product (see ¶ 78-79 *infra*).  Three others referred to Nestlé's Baci product (see ¶  80-85 *infra*).  The remaining ten used the term "kisses" or "kiss" in an arguably descriptive manner, such as a reference to a romantic kiss as in "kiss me."  There are two outstanding alleged infringers identified by PIM, one is Sarris' Sweet Kiss (see ¶ 86 *infra*), and the other is a party to whom Hershey has sent a demand letter and against which Hershey is still considering its enforcement options.  (Duquette Decl. ¶ 19).

70.     There is no evidence as to the amount of money any third party invested in advertising or otherwise promoting any third party product using the term "kiss" or "kisses" in connection with chocolate products or any other products.

16

71.      PIM noticed, and took, the deposition of seven third parties: New England Confectionery, Lammes Candies, Sunsweet, Madelaine, British Wholesale Imports, Nestlé, and Sarris Candies.

72.      New England Confectionery ("NECCO") manufactures a product called "Mary Jane Peanut Butter Kisses," which is taffy and does not contain chocolate.  (Smart Decl. Ex. E, Hague Tr. 17, 19, 71, 73).

73.      NECCO used to manufacture and sell a taffy product called "Mary Jane Chocolate Peanut Butter Kisses," which were taffy flavored with cocoa powder.  (Smart Decl. Ex. E, Hague Tr. 74-76).  NECCO ceased selling this product in 2002.  (*Id.* at 49-51, 76-78).

74.      NECCO has never engaged in consumer advertising for Mary Jane Peanut Butter Kisses or Mary Jane Chocolate Peanut Butters Kisses; it has never placed a print, television, or radio advertisement for the products.  (Smart Decl. Ex. E, Hague Tr. 89-90).

75.      Lammes Candies manufactures a taffy product called Kisses in peppermint, molasses, chocolate, peanut butter, and cinnamon flavors.  (Smart Decl. Ex. J, Teich Tr. 15-16).  Lammes Kisses are taffy, not chocolate products.  (*Id.* at 50-52).  The chocolate flavored Lammes Kisses consists of taffy flavored with chocolate liqueur.  (*Id.* at 51-52).  Sales of chocolate-flavored taffy Kisses are, at most, $100,000 per year.  (*Id.* at 65-66).

76.      Sunsweet, a company that primarily processes dried fruit and juices, sells a product called FRENCH KISSES, which is a prune coated with chocolate.  (Smart Decl. Ex. A, Benham Tr. 46-47).  French Kisses are available only in Sunsweet's retail store in Yuba City, California and on that retail store's website, and have approximately $50,000 annual sales.  (Smart Decl. Ex. A, Benham Tr. 13, 90-91, 109).

77.

78.

79.

80.

81.

82.

83.

84.

85.     Sarris Candies sell a chocolate product called Sweet Kiss.  Sweet Kiss is "not a big selling" or "popular item" and is not sold to any national accounts.  (Smart Decl. Ex. I, Sarris Tr. 110-11, 115).  The majority of sales of Sweet Kiss occur within a 50-100 mile radius of Sarris' headquarters in Canonsburg, PA.  (*Id.* at 112).  Sarris has "zero" advertising budget for Sweet Kiss and the product is not listed on Sarris' website under its "our products" tab.  (*Id.* at 115-17, 123, 125).

**History of Kisses**

86.     There is no evidence that, prior to the introduction of Hershey's KISSES brand chocolates in 1907, the term "kiss" or "kisses" was used to refer to any solid chocolate products in the United States.  (Smart Decl. Ex. B, Butters Tr. 30-31, 66-67, 155).

87.     At the time that Hershey's KISSES brand chocolates were introduced in 1907, there were other small chocolates sold in the United States that were not called "kiss" or "kisses."  (Smart Decl. Exs. R, V, Y).

88.     Prior to the introduction of Hershey's KISSES brand chocolates, Hershey sold a small chocolate product under the name Sweethearts.  There is no evidence that either Hershey or any other person or entity used the term "kiss" or "kisses" in connection with Hershey's Sweethearts product.  (Smart Decl. ¶¶ 19, 25 & Exs. R, X).

89.     Bite-sized generally conical solid chocolates that H.O Wilbur of Wilbur Chocolate introduced in 1894 were called "Wilbur Chocolate Buds."  There is no evidence that Wilbur Chocolate or any other entity, at the time that the product was launched up to and including 1907, used the term "kiss" or "kisses" to refer to the product.  (Smart Decl. Ex. Y).

90.     There is no evidence that any dictionary that pre-dated the introduction of KISSES brand chocolates in 1907 included in the definition of "kiss" a reference to chocolate or solid chocolate.  (Smart Decl. Ex. B, Butters Tr. 14-15, 22-23)

91.     There is no evidence of any recipes that pre-dated the introduction of KISSES brand chocolates in 1907 included a recipe for solid chocolate for something that was called a "kiss" or "kisses."  (Smart Decl. Ex. B, Butters Tr. 22).

92.     Prior to Hershey's adoption of the term KISSES as the name for its chocolates in 1907, the term "kiss" was in use in the United States as a name for a type of meringue and type of taffy.  (Smart Decl. Ex. B, Butters Tr. 15-16, 108).

93.     The *Century Dictionary* of 1891 defined "kiss" as "(a) A confection, usually made of whites of eggs and powdered sugar, mixed and baked in an oven.  (b) A sugar plum or candied confection made of pulled sugar and variously colored and flavored."  (Smart Decl. Ex. B, Butters Tr. 108-09).

94.     In the 19th century, there were "candy confections made of pulled sugar that were called something other than kiss or kisses."  (Smart Decl. Ex. B, Butters Tr. 121).

95.     Around 1910, Hershey sold a small chocolate product under the name Silver Tops.  There is no evidence that either Hershey or any other person or entity used the term "kiss" or "kisses" in connection with Hershey's Silver Tops product.  (Smart Decl. ¶¶ 20, 25 & Exs. S, X).

20

96.     In the time period around 1922, Hershey sold a small, conical solid chocolate product sold under the name Liberty Bells.  There is no evidence that either Hershey or any other person or entity used the term "kiss" or "kisses" in connection with Hershey's Liberty Bells product.  (Smart Decl. ¶¶ 21, 25 & Exs. T, X).

97.     For some period of time between 1926 and 1941, Hershey sold a small conical solid chocolate product under the name Silverpoints.  There is no evidence that either Hershey or any other person or entity used the term "kiss" or "kisses" in connection with Hershey's Silverpoints product.  (Smart Decl. ¶¶ 22, 25 & Exs. U, X).

98.     In the first half of the 20th century, competitors of Hershey marketed bite-sized conical chocolates using terms other than "kisses," such as "Klein's Silver Bells" and "Rockwood's Silver Dew Drops."  (Smart Decl. ¶¶ 24-25 & Exs. W, X).


Dated:  February 5, 2010

                                                McCARTER & ENGLISH LLP

*Of Counsel*

                                                By:   S/William J. Heller
Thomas A. Smart (*pro hac vice*)                      William J. Heller
Paul C. Llewellyn (*pro hac vice*)
Richard A. De Sevo                              Four Gateway Center
Patricia A. Larson (*pro hac vice*)             100 Mulberry Street
David A. Scharfstein                            Newark, New Jersey   07102
KAYE SCHOLER LLP                                973-622-4444
425 Park Avenue
New York, NY  10022                             *Attorneys for Plaintiffs The Hershey*
(212) 836-8000                                  *Company and Hershey Chocolate &*
                                                *Confectionery Corporation*